Richard Montgomery, OSB # 085241
LEGAL AID SERVICES OF OREGON
433 SW Fourth Ave. SW
Albany, OR 97321
(541) 926-8678
Fax: (541) 926-8919
richard.montgomery@lasoregon.org

Emily Teplin Fox, OSB # 121720
OREGON LAW CENTER
522 SW Fifth Ave., Suite 812
Portland, OR 97204
(503) 473-8314
Fax: (541) 295 0676
efox@oregonlawcenter.org

FILED 17 MAY '24 10:53 USDC-ORE

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

EUGENE DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA *ex rel.* JEREMY M LAMBERT,<br><br>Plaintiff,<br><br>v.<br><br>WILLIAM MOYER and CONNIE MOYER,<br><br>Defendants. | **FILED UNDER SEAL**<br><br>Civil Action No. 6:24-CV-00817-AA<br><br>**COMPLAINT**<br>DEMAND FOR JURY TRIAL<br><br>False Claims Act (31 U.S.C. § 3729 *et seq*);<br>Oregon Residential Landlord Tenant Act |

- 1 - - COMPLAINT

## I.

## INTRODUCTION

This action is brought under the False Claims Act, 31 U.S.C. § 3729 *et seq. Qui tam* Plaintiff Jeremy M Lambert rented a residential dwelling unit from Defendants William and Connie Moyer pursuant to the U.S. Department of Housing and Urban Development (hereinafter "HUD") Section 8 Housing Choice Voucher Program.

Defendants violated the law by making false claims and representations concerning the unauthorized collection of rent and utility payments from Plaintiff in excess of the amount of rent approved and paid by HUD on his behalf. Defendant also violated the Oregon Residential Landlord Tenant Act by retaliating and raising rent pursuant to an improper notice.

Plaintiff seeks a statutory share of any damages paid to United States under the False Claims Act, as well as costs and reasonable attorney fees. The United States shall seek all remedies available under the False Claims Act. Plaintiff also seeks actual damages under the Oregon Residential Landlord Tenant Act as well as attorney fees and costs.

## II.

## PARTIES

1. Plaintiff Jeremy M Lambert is a resident of Linn County, Oregon.

2. Lambert was a tenant of Defendants at premises located at 719 7th Ave. Sweet Home, OR 97386 ("the premises") from June 19, 2017, until March 27, 2024.

3. Plaintiff United States of America is *ex rel.* Jeremy M. Lambert.

4. Defendants William and Connie Moyer own the premises rented by Plaintiff Lambert; were Lambert's landlords as defined by the Oregon Residential Landlord Tenant Act, Or. Rev. Stat. chapter 90; and reside in Linn County, Oregon.

2 - COMPLAINT

## III.

## JURISDICTION

5. This court has jurisdiction of the over the federal claim pursuant to 28 U.S.C. §§ 1331 and 1345 and 31 U.S.C § 3732(a).

6. The court has supplemental jurisdiction under 28 U.S.C. § 1367 over the state law claims.

## IV.

## VENUE

7. Defendants committed the unlawful acts in the State or Oregon. Venue is proper under 28 U.S.C. § 1391.

## V.

## FACTS

8. The federal government instituted the Section 8 Tenant Based Housing Choice Voucher Program (hereinafter Section 8 Program) to obtain decent, affordable rental housing for low-income individuals.

9. HUD administers the program.

10. HUD enters into annual contribution contracts with public housing agencies such as the Linn-Benton Housing Authority (hereinafter L-BHA).

11. Pursuant to an annual contribution contract, a public housing agency (hereinafter PHA) enters into a HUD-approved contract known as a Housing Assistance Payments Contract (herein HAPC) with the landlord of an existing dwelling to make monthly housing assistance payments on behalf of eligible tenants.

12. The HAPC establishes a monthly rental amount, which the PHA pays directly the landlord.

13. The HAPC may also provide that the tenant pay rent supplemental to the payments made by the PHA. The tenants' share of the rent is typically 30% of their adjusted income.

14. The total HAPC rent is the sum of the amount paid by the PHA and supplemental tenant rent, if any.

15. The PHA computes the maximum HAPC rent in accordance with HUD guidelines.

16. In addition to the HAPC, the landlord and tenant sign a lease, which must be approved by the PHA in compliance with HUD regulations.

17. Plaintiff applied and was approved for rent assistance through L-BHA.

18. Defendants agreed to rent to Plaintiff on June 12, 2017, for rent in the amount of $612 with an agreed upon move in date of June 19, 2017. *See* Exhibit 1 (Rental Agreement).

19. Both Defendants William Moyer and Connie Moyer were named on the Rental Agreement, and Defendant Connie Moyer signed the Rental Agreement. Defendant Connie Moyer was also the primary contact for Plaintiff in regards to all matters tenancy related.

20. Defendants agreed pursuant to the June 12, 2017, Rental Agreement to be responsible for water, sewer, and garbage. Plaintiff was responsible for electric, gas, cable, and internet.

21. Defendant Connie Moyer and L-BHA entered into a HAPC for Plaintiff on June 29, 2017, for a month-to-month rental agreement that began on June 19, 2017. Defendant William Moyer was not named in the HAPC. *See* Exhibit 2 (HAPC).

22. By signing the HAPC, Defendant Connie Moyer agreed that endorsement of a L-BHA check was certification that "Except for the rent to owner, the owner has not received and will not receive any payments or other consideration (from the family, the PHA, HUD, or any other public or private source) for rental of the contract unit during the HAP contract term." *See* Exhibit 2 at Part B § 8(d).

4 - COMPLAINT

23. In that June 29, 2017 HAPC, the parties agreed to a division of utilities that comported with the parties' June 12, 2017 Rental Agreement. Defendants were responsible for paying for water, sewer, and trash collection. Electricity and gas were the responsibility of the Plaintiff.

24. The HAPC and the Rental Agreement both made Defendants responsible for water, sewer, and garbage.

25. The initial HAPC, along with interim and annual certifications, established the Contract Rent, Tenant Rent and Housing Assistance Payments in place at the relevant times. The following chart illustrates the values reflected by the HAPC, interim and annual certifications in place during the tenancy.

| Date | Contract Rent | HAP | Tenant Rent |
| --- | --- | --- | --- |
| 6/19/2017 | $612 | $436 | $176 |
| 7/1/2017 | $700 | $436 | $264 |
| 4/1/2018 | $612 | $391 | $221 |
| 7/1/2018 | $662 | $391 | $271 |
| 4/1/2019 | $662 | $418 | $244 |
| 4/1/2020 | $662 | $441 | $221 |
| 4/1/2021 | $662 | $438 | $224 |
| 11/1/2021 | $662 | $461 | $201 |
| 1/1/2022 | $737 | $536 | $201 |
| 4/1/2022 | $737 | $523 | $214 |
| 2/1/2023 | $837 | $623 | $214 |
| 4/1/2023 | $837 | $603 | $234 |
| 1/1/2024 | $920 | $686 | $234 |

5 - COMPLAINT

26. For many years, however, Defendants demanded, and Plaintiff paid, amounts in excess of the HAPC. Despite the amounts clearly delineated in the interim and annual certifications, and the HAPC and related HUD rules prohibiting Defendants from charges in excess of the HAPC amount, Defendants nonetheless demanded that Lambert pay more than the Tenant Rent portion each month.

27. Between November 19, 2018, and September 3, 2023, Defendant Connie Moyer and Plaintiff used texts to communicate rental amounts due and additional rental concerns. Text exchanges regarding rents occurred for all months except April 2019, February 2020, May 2021, October 2021, and January 2023. All of Ms. Moyer's texted rent demands, with the exception of October 2019, exceeded the HAPC recertified amounts. The additional amounts ranged from $36 to $129.

28. From January 2019 through June 2020, Plaintiff paid Defendants' texted rent requests. However, Defendants provided Plaintiff signed deposit receipts reflecting the proper, lower amount assigned by the HAPC recertified amounts. These receipts created a paper trail falsely indicating compliance with the HAPC recertified amounts, despite Plaintiff paying more than the HAPC recertified amounts.

29. Starting in August 2020, Defendants provided new, different deposit slips and instructions allowing Plaintiff to directly deposit rent amounts into Defendants' bank account. These deposits accurately reflected Defendants' higher, texted rent demands and discussions between Defendant Connie Moyer and Plaintiff. These deposit slips reflect rent payments in excess of the HAPC tenant rent amounts.

6 - COMPLAINT

30. Between January 2019 and September 2023, Defendants demanded and collected from Plaintiff at least $3,856.57 of overpayments spanning 51 different months. This amount excludes Lambert's incremental payment of a $500 security deposit.

31. In June and July 2023, Plaintiff did not make timely rental payments. Pursuant to the HAPC, Plaintiff was supposed to pay $234 per month at this time.

32. On July 3, 2023, Defendant demanded overdue June 2023 rent of $338.56 and July 2023 rent of $311.78.

33. On July 6, 2023, Defendants issued Plaintiff a nonpayment termination notice for June and July 2023. In contradiction with the previously texted rent demands, Defendants issued Plaintiff a nonpayment termination notice for the HAPC approved unpaid Tenant Rent amount of $234 x 2 or $468 plus additional late fees.

34. On or about July 10, 2023, Plaintiff discussed with his HUD representative the terms of his rental contract. Plaintiff realized, for the first time, that his Tenant Rent was $234 and that Defendants could not demand more. Plaintiff sent that information via text to Defendant Connie Moyer that day. Plaintiff reiterated this assertion on August 4, 2023, August 17, 2023, and again after Defendants nonetheless demanded rent of $391.34 on September 3, 2023. This demand was $157 more than the HAPC approved amount.

35. Deposit slip, deposit receipt and text records show overpayments totaling $4,356.57. Subtracting $500 to fulfill Plaintiff's security deposit responsibility, documentary evidence shows a total overpayment/side payments of at least $3,856.57. Plaintiff expects the amount of overpayment to increase following discovery of deposits made in months for which Plaintiff does not have text or deposit slip records.

36. On September 3, 2023, Plaintiff yet again asserted by text that his rent was the current HAPC Tenant Rent amount of $234 and no more.

37. Defendant Connie Moyer replied that day on text that Plaintiff had "agreed to pay water and sewer because I cannot continue to rent it so cheap because of taxes and insurance so high and I pay garbage ...."

38. No change to the division of utilities in place at the initial HAPC contract and initial rental agreement signing was ever submitted to L-BHA.

39. On October 2, 2023, Defendants issued Plaintiff a 90-day rent increase notice. Pursuant to the April 1, 2023 recertification, the Contract Rent for the tenancy was $837. The increase notice raised the contract rent by $363 to $1200. This notice increased the rent by 43%, well above the 10% maximum imposed by Or. Rev. Stat. § 90.323(2)(d) as amended by SB 611 (2023).

40. The L-BHA case manager in charge of processing rent increases contacted Defendant Connie Moyer regarding the rent increase, and advised Defendant Connie Moyer to review the rent increase statutes.

41. On November 28, 2023, Defendants issued Plaintiff a revised 90-day rent increase notice of $163 to $1000, a 19% rent increase. The November 28, 2023 increase was effective January 1, 2024, and therefore only provided for 33 days of notice. According to Or. Rev. Stat. § 90.323 (3), a rental increase notice requires at least 90 days to be effective. In addition, the 19% increase is still above the 10% maximum allowed by the statute.

42. On November 30, 2023, Plaintiff's attorney telephoned Defendant Connie Moyer, to encourage Defendant Moyer to comply with ORS § 90.323, seek legal advice and know to expect a letter from Plaintiff's attorney.

8 - COMPLAINT

43. On December 4, 2023, Plaintiff, through his attorney, issued a demand letter regarding the improper rent increase to Defendants.

44. On December 12, 2023, Defendants issued a revised 90-day rental increase notice of $83 to $920, a 10% rent increase. This notice complied with the maximum rent increase cap but went into effect on January 1, 2024. This notice provided 19 days' notice, far less than the 90 days required by ORS § 90.323(2)(b). This notice was statutorily ineffective to increase the rent. By statute, the Contract Rent remained at $837.

45. L-BHA issued a HAPC recertification to start on January 1, 2024. The new Contract Rent amount was $920. The Tenant Rent remained at $234, and the HAP portion increased from $603 to $686. The December 12, 2023, rental increase notice had likewise raised the L-BHA payment to $686.

46. On February 26, 2024, Plaintiff delivered a 30-day notice of termination to Defendants.

47. On or about March 10, 2024, Plaintiff vacated the unit, and the tenancy ended pursuant to Plaintiff's termination notice on March 27, 2024.

## VI.

## CLAIMS FOR RELIEF

## FIRST CLAIM FOR RELIEF

(False Claims Act, 31 U.S.C. § 3729)

48. Plaintiff incorporates all preceding paragraphs by reference.

49. Defendants' endorsement and presentment of each housing assistance payment check for each month while they knowingly received "side payments" from Plaintiff constitutes a separate false claim or representation to the United States that they did not receive any other consideration for the rented premises as set forth in the HAPC.

50. Defendants knowingly made or used, or caused to be made used, false records or statements to get false or fraudulent claims paid or approved by officials of the United States Government, in violation of 31 U.S.C. § 3729(a).

51. In the HAPC, Defendants agreed to comply with its provisions. Therefore, Defendants knowingly violated the HAPC when they demanded and received side payments from Plaintiff while simultaneously receiving federal housing assistance payments.

52. Defendants' failure to inform L-BHA that they were collecting these side payments caused the government to issue HAP payments Defendants were no longer entitled to receive. According to Part B of the HAPC, section 7(b) "**Owner compliance with HAP contract** Unless the owner has complied with all provisions of the HAP contract, the owner does not have a right to receive housing assistance payments under the HAP contract."

53. The United States of America suffered damages as a result of violations of the False Claims Act because the housing assistance payment money which HUD disbursed to L-BHA for payment to Defendants under the Section 8 Program on behalf of Plaintiff would not have been paid to the Defendants absent their false claims and misrepresentations.

54. The United States sustained damages equal to all payments made to the Defendants pursuant to the Section 8 Program for the premises. The total HAP payments made during the 51 violations discussed above amounts to at least $24,293.00.

55. Pursuant to 31 U.S.C. § 3730(d), Plaintiff is entitled to all remedies allowed under the False Claims Act and reasonable attorney fees and costs.

## VII.

## SECOND CLAIM FOR RELIEF

(False Claims Act, 31 U.S.C. § 3729)

56. All preceding paragraphs are incorporated here by reference.

57. Plaintiff on or about September 3, 2023, asserted that his tenant rent obligation pursuant to the HAPC was only $234 a month.

58. Defendants on October 2, 2023, issued Plaintiff a 90-day rental increase notice to be effective on January 1, 2024. The rent increase raised the Contract Rent from $837 to $1200. This was an increase of $363, a 43% increase in rent.

59. Pursuant to ORS § 90.323, the maximum increase in monthly rent is 10%.

60. Upon receipt of the rental increase notice, the L-BHA case manager in charge of processing rent increases advised Defendant Connie Moyer to review the rental increase statutes. Defendant Connie Moyer confirmed her desire to impose the rental increase.

61. On November 28, 2023, Defendants issued Plaintiff a revised rental increase notice. This notice raised the Contract Rent from $837 to $1000. This increase was to be effective on January 1, 2024. This notice was also statutorily deficient, both exceeding the limit on rental increase amount and also failing to provide 90 days notice as required by Or. Rev. Stat. §90.323.

62. On December 12, 2023, Defendants issued another statutorily ineffective rent increase notice.

63. L-BHA issued a HAPC recertification to start on January 1, 2024. The new Contract Rent amount was $920. The Tenant Rent remained at $234, and the HAP portion increased from $603 to $686. The December 12, 2023, rental increase notice raised likewise raised the L-BHA payment to $686.

64. Despite being aware of the statutory violations regarding each and every attempted rental increase between October 2, 2023 and January 1, 2024, Defendants nevertheless accepted the increased HAP amount of $686 in 2024.

11 - COMPLAINT

65. L-BHA paid Defendants the increased HAP portion of $686 on January 2, 2024, February 1, 2024 and a prorated $597 for March 1, 2024.

66. Pursuant to the HAPC, Part B(2)(d), "The owner certifies that … (3) The lease is consistent with State and local law."

67. Defendants' endorsement and presentment of each housing assistance payment check for each month following the improper and ineffective rental increase notice constitutes a separate false claim or representation to the United States that they did not receive any other consideration for the rented premises as set forth in the HAPC.

68. Defendants knowingly made or used, or caused to be made used, false records or statements to get false or fraudulent claims paid or approved by officials of the United States Government, in violation of 31 U.S.C. § 3729(a).

69. In the HAPC, Defendants agreed to comply with its provisions. Therefore, Defendants knowingly violated the HAPC when they demanded and received the increased HAP portion pursuant to the statutorily ineffective rental increase.

70. Defendants' failure to retract the improper rental increase notices between October 2, 2023 and January 1, 2024, caused the government to make an increased and improper HAP payment to Defendants that they were not entitled to. According to Part B of the HAPC, section 7(b) "**Owner compliance with HAP contract** Unless the owner has complied with all provisions of the HAP contract, the owner does not have a right to receive housing assistance payments under the HAP contract."

71. The United States of America suffered damages as a result of violations of the False Claims Act because the housing assistance payment money which HUD disbursed to L-BHA for

payment to Defendant under the Section 8 Program on behalf of Plaintiff would not have been paid to the Defendants absent their false claims and misrepresentations.

72. The United States sustained damages equal to all payments made to the Defendants pursuant to the Section 8 Program for the premises pursuant to the improper rental increase. The total HAP payments made during the 3 violations amounts to $1,969.

73. Pursuant to 31 U.S.C. § 3730(d), Plaintiff is entitled to all remedies available under the False Claims Act and reasonable attorney fees and costs.

### THIRD CLAIM FOR RELIEF

(Retaliation, ORS 90.385)

74. All preceding paragraphs are incorporated here by reference.

75. On September 3, 2023, Defendants demanded, via text, tenant rent payment in excess of the L-BHA HAPC Tenant Rent portion.

76. Whereas, in the past, Plaintiff had acquiesced to Defendants' demands for side payments, this time –newly armed with knowledge that the side payments were illegal – Plaintiff refused. Plaintiff asserted to Defendants in good faith that his tenant rent was $234, the approved L-BHA HAPC Tenant Rent Portion.

77. On October 2, 2023, Defendants issued Plaintiff an illegal rent increase notice that vastly exceeded the statutory limit on rent increases.

78. According to ORS § 90.385, "(1) Except as provided in this section, a landlord may not retaliate by increasing rent or decreasing services, by serving a notice to terminate the tenancy or by bringing or threatening to bring an action for possession after: … (b) The tenant has made any complaint to the landlord that is in good faith and related to the tenancy;…."

79. Plaintiff asserted in good faith that his rent was only $234. Defendant Connie Moyer retaliated by increasing Plaintiff's rent, far beyond statutory limits. The rent increase was statutorily unlawful imposing a 43% increase in the Contract Rent. This increase was initiated the month following Plaintiff's valid assertion of his then current Tenant Rent portion.

80. While Defendants did ultimately reduce the amount of rent increase down to a statutorily approved amount, Defendants never adjusted the effective date of the rental increase. The final December 12, 2023, rental increase improperly attempted to relate back to the date on the initial retaliatory October 2, 2023, rental increase notice.

81. Defendants willfully disregarded requests by Plaintiff's attorney to provide a statutorily compliant notice to Plaintiff.

82. Pursuant to ORS § 90.385(3) and by reference ORS § 90.375, Plaintiff is entitled to two months of the periodic rent or twice the damages, whichever is greater. The rent at the time of the Rental Agreement's termination was $837 dollars. Plaintiff seeks $1,674 in statutory damages.

83. Pursuant to ORS § 90.255, Plaintiff is entitled to reasonable attorney fees and costs.

## IX.

## JURY TRIAL

84. Plaintiff respectfully demands a jury trial.

## IX.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff Jeremy M Lambert and the United States of America respectfully request the following relief:

1. Find the Defendants violated the False Claims Act and are liable to the United States of America for Plaintiff's First Claim for Relief.

2. Assess a civil penalty against Defendants, for each violation of the False Claims Act pursuant to Plaintiff's First Claim for Relief, in the amount of not less than $13,508 or more than $27,018 per violation.

3. Award the United States three times the amount of damages which it sustained as a result of the Defendants acts pursuant to Plaintiff's First Claim for Relief.

4. Award Plaintiff Lambert the *qui tam* Plaintiff's share of the proceeds or settlement pursuant to 31 U.S.C § 3730(d).

5. Find the Defendants violated the False Claims Act and are liable to the United States of America for Plaintiff's Second Claim for Relief.

6. Assess a civil penalty against Defendants, for each separate violation of the False Claims Act, pursuant to Plaintiff's Second Claim for Relief, in the amount of not less than $13,508 or more than $27,018 per violation.

7. Award the United States three times the amount of damages which it sustained as a result of the Defendants' acts pursuant to Plaintiff's Second Claim for Relief.

8. Award Plaintiff Lambert the *qui tam* Plaintiff's share of the proceeds or settlement pursuant to 31 U.S.C § 3730(d).

9. Award Plaintiff Lambert damages in the amount of $1,674 for Plaintiff's Third Claim for Relief.

10. Award costs and reasonable attorney fees to Plaintiff Lambert.

11. Grant whatever other relief is proper.

DATED: May 15, 2024

Respectfully submitted,

/s/ Richard Montgomery
Richard Montgomery, OSB # 085241
LEGAL AID SERVICES OF OREGON
433 SW Fourth Ave. SW
Albany, OR 97321
(541) 926-8678
Fax: (541) 926-8919
richard.montgomery@lasoregon.org

Emily Teplin Fox, OSB # 121720
OREGON LAW CENTER
921 SW Washington, Suite 516
Portland, OR 97205
(503) 295-2760
Fax: (541) 295 0676
efox@oregonlawcenter.org

16 - COMPLAINT